IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON

**CORIE ANN MAYS,**

      **Plaintiff,**

v.                                             **CIVIL ACTION NO. 2:17-cv-02084**

**NANCY A. BERRYHILL,**
 **Acting Commissioner of Social Security,**

      **Defendant.**

### PROPOSED FINDINGS AND RECOMMENDATION

      This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for Disability Insurance Benefits under Title II of the Social Security Act. Presently pending before this Court are Plaintiff's Brief in Support of Judgment on the Pleadings (ECF No. 9) and Defendant's Brief in Support of Defendant's Decision (ECF No. 10).

      Corie Ann Mayes, Claimant, filed an application for DIB on approximately May 7, 2014. Claimant alleged disability beginning May 7, 2014. The claim was denied initially on May 30, 2014, and upon reconsideration on October 6, 2014. Thereafter, Claimant filed a written request for hearing on November 4, 2014. On August 5, 2015, a video hearing was held with Claimant appearing in Huntington, West Virginia. The Administrative Law Judge (ALJ) presided over the video hearing from Saint Louis, Missouri. By decision dated January 28, 2016, the ALJ determined that Claimant was not entitled to benefits. Claimant sought review by the Appeals Council of the ALJ's unfavorable decision on March 31, 2016. On January 31, 2017, the AC notified Claimant that her request for review was denied (Tr. at 1-5). Thereafter, Claimant filed a Complaint with this Court pursuant to 42 U.S.C. § 405(g).

Standard of Review

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. *See Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520 (2017). If an individual is found "not disabled" at any step, further inquiry is unnecessary. *Id.* § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. *Id.* § 404.1520(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. *Id.* § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. *Id.* § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. *Id.* If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. *Id.* § 404.1520(e). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. *Hall v. Harris,* 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 404.1520(f) (2017). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job,

and (2) that this specific job exists in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.*
>
>> (1)  Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
>> (2)  We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.

3

>> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation:
>>> Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.
>> (4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1). Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and

conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.  20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant meets the insured status requirements of the Social Security Act through June 30, 2019 (Tr. at 16). The ALJ found that Claimant has not engaged in substantial gainful activity since the alleged onset date of May 7, 2014. (*Id.*)  Under the second inquiry, the ALJ found that Claimant suffers from the following severe impairments: Alcohol dependence; major depressive disorder; anxiety; diabetes mellitus; lumbago; breast hypertrophy; chondromalacia of the patella; and obesity (Tr. at 17). At the third inquiry, the ALJ concluded that Claimant did not have an impairment or combination of impairments that met or medically equaled the level of severity of Listings 12.04 and 12.09.[1] (*Id.*) The ALJ then found that if Claimant stopped the substance use, the remaining limitations would cause more than a minimal impact on Claimant's ability to perform basic work activities; therefore,

---

[1] Claimant merely states that she meets Listings 12.04 and 12.09, but she does not identify the specific criteria of each listing or explain why she believes her impairments meet each listing.  Because Claimant's argument is not fully developed, it should be deemed waived.  *See Belk, Inc. v. Meyer Corp.*, *U.S.*, 679 F.3d  146, 152 n. 4 (4th Cir.2012) ("This issue is waived because [the plaintiff] fails to develop this argument to any extent in its brief."); *McConnell v. Astrue*, Civil Action No. 3:2009-44, 2010 WL 2925053, at *5 (W.D. Pa. July 20, 2010) (deeming McConnell's "superficial" listings argument waived, stating "McConnell makes no attempt to explain the precise basis for his belief that his impairments equaled Listings 12.04 and 12.06. . . .   He makes no direct reference to the specific criteria enumerated in Listings 12.04 and 12.06.1") (*citing Grimaldo v. Reno*, 189 F.R.D. 617, 619 (D. Colo. 1999)).

the Claimant would continue to have a severe impairment or combination of impairments (Tr. at 18). The ALJ further found that "If the claimant stopped the substance use, the claimant would not have an impairment or combination of impairments that meets or medically equals any of the impairment Listings (Tr. at 19). Additionally, the ALJ held that if Claimant stopped the substance use, Claimant would have the residual functional capacity (RFC) to perform a range of light work consisting of lifting up to 20 pounds occasionally and 10 pounds frequently, standing and walking for about 6 hours and sitting for up to 6 hours in an 8-hour workday, with normal breaks. Claimant is able to occasionally crawl, crouch, kneel, stoop, balance or climb ramps, stairs, ladders, ropes or scaffolds. Claimant is able to understand, remember and carry out simple instructions, make judgments on simple work decision, interact appropriately with supervisors and coworkers in a routine work setting and respond to usual work situations and changes in a routine (Tr. at 20). The ALJ found that if Claimant stopped the substance use, Claimant would be able to perform past relevant work as a fast food worker, sandwich maker and cook helper. "This work does not require the performance of work-related activities precluded by the residual functional capacity the claimant would have if she stopped the substance use" (Tr. at 23). The ALJ found that "The substance use disorder is a contributing factor material to the determination of disability because the claimant would not be disabled if she stopped the substance use… Because the substance use disorder is a contributing factor material to the determination of disability, the claimant has not been disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of this decision" (Tr. at 24). Therefore, the ALJ concluded that Claimant was not disabled. (*Id.*)

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In *Blalock v. Richardson*, substantial evidence was defined as:

> Evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. *Hays v. Sullivan,* 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner in this case is supported by substantial evidence.

Claimant's Background

Claimant was born on March 7, 1966. On the date of the hearing, she weighed approximately 170 pounds and stood at 5 foot 3 inches tall (Tr. at 42). Claimant dropped out of school in the tenth grade but later received her GED. Claimant does not have a driver's license due to three DUI's. (*Id.*)

The Medical Record

The medical record has been adopted, as set out in the Claimant's Brief, Defendant's Brief and the ALJ's decision to the extent as follows.

7

Claimant reported at the administrative hearing and to several medical providers that she only consumed alcohol on occasion (Tr. at 46, 382). When she was not abusing alcohol, treatment notes document generally benign objective findings. On April 4, 2013, Lucia Soltis, M.D., Claimant's physician at Lincoln County Primary Care Center, noted that that Claimant had no obvious psychopathology (Tr. at 384). During follow up appointments at Lincoln County Primary Care Center between September 2013 and July 2015, Claimant's mental status examinations were normal, showing that Claimant had a normal mood and affect, was active and alert and was fully oriented (Tr. at 388, 391, 395, 399, 735, 739, 743, 747).

On June 25, 2013, Claimant saw Nika Razavipour, M.D., for a new patient evaluation and psychiatric medication management (Tr. at 764). Claimant denied any prior psychiatric hospitalizations, suicide attempts, auditory/visual hallucinations or suicidal/homicidal ideation. *Id.* Claimant's mental status examination was unremarkable showing her to be well groomed, cooperative and calm with normal speech, euthymic mood, goal-directed thought processes and appropriate thought content (Tr. at 764-765). Dr. Razavipour assessed Claimant with major depressive disorder and alcohol dependence and rated her Global Assessment of Functioning (GAF) score at a 60, indicative of borderline-mild symptoms (Tr. at 765-766). Claimant presented for seven follow up appointments with Dr. Razavipour between September 2013 and April 2015. Although she complained of some psychosocial stressors during these appointments, Claimant always reported that she was doing well and continuing to work (Tr. at 402, 483, 488, 494, 768, 772, 776). In addition, Claimant's MSEs were unchanged (Tr. at 402-403, 483-484, 489-490, 495-496, 768-769, 772-773, 776-777). Dr. Razavipour continued to rate her GAF score at only a 60 (Tr. at 404, 485, 491, 770, 774, 778).

Claimant has a long history of alcohol dependence that causes a serious decline in functioning when she is abusing alcohol. Treatment notes document that Claimant required two inpatient hospitalizations in 2015 for suicidal ideation while abusing alcohol. On August 11, 2015, emergency medical services transported Claimant to the emergency room at Cabell Huntington after she attempted to overdose on prescription medication while drinking heavily (Tr. at 501, 521). Claimant reported that although she had been a daily drinker for many years, she had drank much more than usual that day. (*Id.*) Claimant agreed to a psychiatric hospitalization for stabilization, medication management and alcohol detoxification (Tr. at 504). On August 17, 2015, physicians discharged her in stable condition to the Crisis Residential Unit at the Prestera Center where she stayed until August 21, 2015 (Tr. at 685). At the Crisis Residential Unit, physicians rated Claimant's Global Assessment of Functioning (GAF) score as a 35, indicative of serious symptoms. (*Id.*)

Claimant continued drinking after being discharged from the Crisis Residential Unit at the Prestera Center and was hospitalized at Cabell Huntington Hospital after a second attempted drug overdose while abusing alcohol on September 24, 2015 (Tr. at 579). Claimant again spent several days in the hospital before being transferred to the Crisis Residential Unit where she stayed for four days until October 2, 2015. At the Crisis Residential Unit, Claimant's GAF score remained low at a 35 (Tr. at 676). However, on October 1 and 2, 2015, Claimant reported improved symptoms with no suicidal ideation and her mental status examinations were unremarkable (Tr. at 661-663, 667-669). A medication management note from October 13, 2015, showed improved symptoms after medication changes and sobriety while hospitalized (Tr. at 650).

On October 15, 2015, Dr. Razavipour completed a mental status statement indicating that Claimant had "marked" or "extreme" limitations in her ability to:

9

- Understand and remember simple instructions;
- Carry out simple instructions;
- Make judgments on simple work related decisions;
- Carry out complex instructions;
- Make judgments on complex work-related decisions;
- Interact appropriately with the public, supervisors, and co-workers;
- And respond appropriately to usual work situations and changes in a routine work setting

(Tr. at 729). Dr. Razavipour also suggested that Claimant would be absent from work five days or more per month (Tr. at 731).

### Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the ALJ failed to properly consider the opinion of Claimant's treating psychiatrist. Claimant argues that her treating psychiatrist provided the basis for the testimony of the vocational expert who stated that Claimant is incapable of substantial gainful activity if her absences and/or off-task periods exceed acceptable tolerances (ECF No. 9).

In response, Defendant asserts that the ALJ appropriately determined, based on substantial evidence in the record, that Claimant's substance abuse was material to finding a disability (ECF No. 10). Defendant avers that substantial evidence supports the ALJ's evaluation of Dr. Razavipour's opinion. (*Id.*)

### Discussion

The Social Security Act defines "disability" in terms of the effect a physical or mental impairment has on a person's ability to function in the workplace. 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 04.1505(a); *see Heckler v. Campbell*, 461 U.S. 458, 459-60 (1983); *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) ("[An impairment] is not necessarily disabling. There must be a showing of related functional loss."). The responsibility for determining whether Claimant is disabled resides with the Commissioner. 20 C.F.R. § 404.1527(e)(1). To be eligible for disability benefits, Claimant bears the burden of showing not only that she has a medically determinable

impairment, but that it is so severe that it prevents her from engaging in her past relevant work or any other substantial gainful activity that exists in the national economy for a 12-month period. 42 U.S.C. §§ 423(d)(1)(A), (d)(2)(A).

## Weight Afforded Medical Opinions

For claims filed before March 27, 2017,[2] the standards for evaluating medical opinion evidence are set forth in 20 C.F.R. § 404.1527. That regulation defines "medical opinions" as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." *See* 20 C.F.R. § 404.1527(a)(1). For purposes of the regulation, an "acceptable medical source" includes a licensed physician or psychologist. *Id.* § 404.1502(a). The regulation provides that the ALJ "will evaluate every medical opinion" presented to him, "[r]egardless of its source." *Id.* § 404.1527(c). Generally, however, more weight is given "to the medical opinion of a source who has examined you than to the medical opinion of a medical source who has not examined you." *Id.* § 404.1527(c)(1).

Significantly, the regulation embodies a treating physician rule that accords the greatest weight — controlling weight — to the opinions of the claimant's "treating sources." *See* 20 C.F.R. § 404.1527(c)(2). The regulation defines a "treating source" as "your own acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you." *Id.* § 404.1527(a)(2). The regulation explains:

> Generally, [the ALJ gives] more weight to medical opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to

---

[2] For claims filed on or after March 27, 2017, the rules in § 404.1520c apply.

11

> the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. *Id.* § 404.1527(c)(2).

The regulation promises that the ALJ "will always give good reasons in [his] decision for the weight [he gives] your treating source's medical opinion." *Id.*

Under the regulation's treating physician rule, controlling weight is to be accorded to "a treating source's medical opinion on the issue(s) of the nature and severity of your impairment(s)" if that opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record." *See* 20 C.F.R. § 404.1527(c)(2). When a treating source's medical opinion is not given controlling weight, five factors are utilized to determine what lesser weight should instead be accorded to the opinion. The first two of those factors are specific to treating sources:

> ● "Length of the treatment relationship and the frequency of examination," *see* 20 C.F.R. § 404.1527(c)(2)(i); and
> ● "Nature and extent of the treatment relationship," *Id.* § 404.1527(c)(2)(ii).

The other three factors are used to determine the weight to be given to any medical opinion, whether from a treating or nontreating source:

> ● "Supportability" in the form of the quality of the explanation provided for the medical opinion and the amount of relevant evidence - "particularly medical signs and laboratory findings" - substantiating it; *Id.* § 404.1527(c)(3);
> ● "Consistency," meaning how consistent the "medical opinion is with the record as a whole," *Id.* § 404.1527(c)(4); and
> ● "Specialization," favoring "the medical opinion of a specialist about medical issues related to his or her area of specialty," *Id.* § 404.1527(c)(5).

Additionally, any other factors "which tend to support or contradict the medical opinion" are to be considered. *Id.* § 404.1527(c)(6).

12

Claimant argues the following;

> The Administrative Law Judge found that Plaintiff is disabled but erred when he stated that "[T]he substance use disorder is a contributing factor material to the determination of disability because the claimant would not be disabled if she stopped the substance use" (TR. 14- 15; 18-24). It is Plaintiff's position that her mental impairments meet the requirements of Listings 12.04 and 12.09 even in the absence of substance use. This assertion is supported by the findings of Niki Razavipour, M.D., Plaintiff's treating psychiatrist, who in Exhibit 11F (TR. 728- 732) stated that Plaintiff has mental limitations as follows:
>
> Major depressive disorder, recurrent, Severe mental impairment and symptoms Prognosis: Poor
>
> Extreme limitations in ability to:
> interact appropriately with the public
> - interact appropriately with supervisor(s)
> - interact appropriately with co-workers
> - respond appropriately to usual work situations and to change in a routine work setting
>
> Extreme symptoms relating to:
> - mood disturbance
> - difficulty thinking and concentrating
> - pathological dependence, passivity or aggressively
> - persistent disturbances of mood or effect
> - emotional withdrawal or isolation
> - sleep disturbance
>
> Marked limitations in ability to:
> - understand and remember simple instructions
> - carry out simple instructions
> - make judgments on simple work related decisions
>
> Marked symptoms relating to:
> - decreased energy
> - thoughts of suicide
> - blunt, flat or inappropriate affect
> - feelings of guilt or worthlessness
> - poverty of content of speech
> - motor tension
> - memory impairment

- recurrent and severe panic attacks

> In light of the aforesaid findings, Dr. Razavipour opined that Plaintiff's impairments would cause her to be absent from work five (5) or more days per month (TR. 728-732). This opinion is critical because the Vocational Expert testified that an individual would not be retained in substantial gainful activity if the individual is off-task 5% to 10% of the normal workday or misses one (1) day or more per month every other month (TR. 68-69). The medical evidence of record demonstrates that Plaintiff would exceed the workplace tolerances outlined by the Vocational Expert. Lastly and most importantly, Dr. Razavipour's opinion is not dependent upon substance use and is made irrespective of same. In fact, the opinion is silent as to substance use (ECF No. 9).

The ALJ gave the opinion of Dr. Razavipour some weight. The ALJ held that in October 2015, Dr. Razavipour opined that Claimant had marked to extreme limitations in all areas of functioning, however, Dr. Razavipour did not comment regarding the effects of claimant's substance abuse on her level of functioning (Tr. at 23). The ALJ found that the extreme limitations provided by Dr. Razavipour are inconsistent with his own treatment records during reported periods of sobriety. (*Id.*)

### Vocational Expert

At the hearing, the ALJ asked a vocational expert whether jobs existed in the regional and national economy for a hypothetical individual with Claimant's age, education, work experience and residual functional capacity. The vocational expert testified that given all of the factors the individual would be able to perform the requirements of representative occupations such as fast foods worker, sandwich maker, cook helper, cleaner in residences and home attendant for daughter (Tr. at 67).

Claimant's counsel asked the VE "how many unexcused or unscheduled absences do employers customarily tolerate from their employees per month in order for the employees to be able to maintain competitive employment (Tr. at 68). The VE testified that "on average most

employers will accept one absence every other month. The minority of employers would accept up to once absence per month at most." (*Id.*) The VE testified that an employer will typically tolerate an individual being off task in addition to regularly scheduled breaks between 5 to 10% of the workday depending on the type of job (Tr. at 68-69).

Claimant asserts that the ALJ "erred when he disregarded the opinion of [Claimant's] treating psychiatrist which provided the basis for the testimony of the Vocational Expert who stated that [Claimant] is incapable of substantial gainful activity if her absences and/or off-task periods exceed acceptable tolerances" (ECF No. 9).

While questions posed to the vocational expert must fairly set out all of Claimant's impairments, the questions need only reflect those impairments that are supported by the record. *See Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987). Additionally, the hypothetical question may omit non-severe impairments, but must include those which the ALJ finds to be severe. *Benenate v. Schweiker*, 719 F.2d 291, 292 (8th Cir. 1983).

The Fourth Circuit has held, "We recognize that not every nonexertional limitation or malady rises to the level of a nonexertional impairment, so as to preclude reliance on the grids." *Grant v. Schweiker*, 699 F.2d 189 (4th Cir. 1983). The proper inquiry under *Grant* is whether the nonexertional condition affects an individual's residual functional capacity to perform work of which she is exertionally capable.

In the present matter, the ALJ found that if Claimant stopped the substance abuse, Claimant's impairments do not meet or medically equal one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. Substantial evidence supports the determination of the ALJ. The ALJ's decision reflects an adequate consideration of her impairments. The ALJ appropriately weighed the opinion of Dr. Razavipour and the evidence of record in its entirety. The ALJ found

that "In terms of the claimant's mental health symptoms, records do not show disabling symptoms during periods of sobriety" (Tr. at 22). The ALJ appropriately relied on the evidence as a whole to determine that Claimant is able to perform jobs in existence in the nation and region. Accordingly, the ALJ denied Claimant's application for DIB under the Social Security Act.

## Conclusion

Claimant's contention that the ALJ should have weighed Dr. Razavipour's opinion differently is unpersuasive. It is the ALJ's exclusive responsibility as the fact finder to evaluate medical opinions and judge whether they are supported by and consistent with the rest of the record. 20 C.F.R. § 404.1527(c), (e). The ALJ is permitted to discount an opinion where it is not supported by clinical evidence or is not consistent with other evidence in the record. *Id.*

Claimant's argument relies on the October 2015 opinion of Dr. Razavipour, who checked off boxes indicating that Claimant had "marked" and "extreme" mental functional limitations (Tr. at 728-732). Notably, this opinion was issued just two days after Dr. Razavipour noted that Claimant showed improved symptoms after medication changes and sobriety (Tr. at 650, 732).

The ALJ accorded some weight to Dr. Razavipour's opinions, as it was consistent with Claimant's ability to function when considering alcohol abuse (Tr. at 18). Then, the ALJ explained later in the decision that when Claimant stopped abusing alcohol her condition improved beyond that reflected in such opinions (Tr. at 23). *See Gassaway v. Colvin*, No. 1:12-cv-00982(IDD), 2013 WL 2389894, at \*6 (E.D. Va. May 29, 2013) ("'There is no particular language or format that an ALJ must use in his . . . analysis as long as there is sufficient development of the record and explanation of the findings to permit meaningful review'") (quoting *Clark v. Comm'r of Soc. Sec.*, No. 2:09cv417, 2010 WL 2730622, at \*17 (E.D. Va. June 3, 2010)); *Vest v. Astrue*, No. 5:11cv047, 2012 WL 4503180, at \*2 (W.D. Va. Sept. 28, 2012) (rejecting requirement that "the

ALJ . . . need . . . use any particular 'magic words'" in her analysis).

More specifically, the ALJ noted that Dr. Razavipour's extreme opinion was unsupported by his own contemporaneous objective findings and the other evidence of record (Tr. at 23). 20 C.F.R. §§ 404.1527(c)(3)-(4) (explaining that less weight is given to an opinion that is inconsistent with or unsupported by the other evidence); *see also Johnson v. Astrue*, No. 11-346, 2012 WL 3596545, at \*14 (E.D. Va. July 26, 2012) (discounting medical opinion where treatment notes failed to corroborate check marks). The other objective medical evidence likewise refuted Dr. Razavipour's overly restrictive opinion.

Accordingly, substantial evidence supports the weight the ALJ afforded to Dr. Razavipour's opinion and there is no basis to disturb his well-reasoned decision. *See Perales*, 402 U.S. at 399 (the duty to weigh the evidence rests with the trier of fact, not the reviewing court).

For the reasons set forth above, it is hereby respectfully **RECOMMENDED** that the presiding District Judge **DENY** the Plaintiff's Brief in Support of Motion for Judgment on the Pleadings (ECF No. 9) to the extent Plaintiff seeks remand pursuant to sentence four of 42 U.S.C. § 405(g), **GRANT** the Defendant's Brief in Support of Defendant's Decision (ECF No. 10), **AFFIRM** the final decision of the Commissioner and **DISMISS** this matter from this Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Judge Joseph R. Goodwin. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then ten days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of

the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Goodwin and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

Enter: August 29, 2018

Dwane L. Tinsley
United States Magistrate Judge